IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE THOMAS | ) | |
| | ) | |
| Plaintiff, | ) | No. 16-cv-03950 |
| | ) | |
| v. | ) | Honorable Judge John Z. Lee |
| | ) | Magistrate Judge Shelia Finnegan |
| | ) | |
| COACH OUTLET STORE, UNKNOWN | ) | |
| COACH OUTLET STORE MANAGER, and | ) | |
| COACH, INC. | ) | |
| | ) | |
| Defendants. | ) | **JURY DEMANDED** |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' FED. R. CIV. P. 12(B)(6)
MOTION TO DISMISS WITH PREJUDICE**

NOW COMES the Plaintiff, MICHELLE THOMAS, by and through her attorneys, Mary J. Grieb and the Shiller Preyar Law Offices, with the instant response to Defendants' Motion to Dismiss Plaintiff's Complaint with prejudice. In support, Plaintiff states as follows:

**INTRODUCTION**

The Defendants attempt to escape liability to the Plaintiff by arguing that the Plaintiff was not an employee of Coach, Inc., and therefore cannot state a 42 U.S.C. § 1981 ("Section 1981") ("Count I") or Title VII of the Civil Rights Act of 1964 ("Title VII") (Count II) claim against the Defendants. Rather than taking Plaintiff's well-pleaded allegations as true and all reasonable inferences in her favor, Defendants attempt to cherry pick allegations from Plaintiff's complaint and then seek to bar Plaintiff from proceeding in her case. Defendants' motion is a premature attempt to dispose of this case.

In fact, Plaintiff has raised plausible allegations that she was fired by her employer due to Plaintiff's race. Defendants impermissibly seek to hold Plaintiff to a higher pleading standard

1

than what is required under the Federal Rules of Civil Procedure. For the reasons stated *infra*, Plaintiff respectfully requests that Defendant's motion to dismiss be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Michelle Thomas is an African-American female who was contracted through SOS Security to work for the Coach Outlet Store as an overnight security guard during the store's remodeling. Complaint ¶¶ 9-10. On May 2, 2014, Plaintiff was finishing her first of three shifts when the Manager, who is not African-American, arrived at the store and immediately falsely accused the Plaintiff of stealing. ¶¶10-16. Coach or its manager determined when Plaintiff's shift started on July 1, 2014, and when the manager arrived in the morning, Plaintiff's shift ended. Despite the fact that the Manager did not find any stolen items on the Plaintiff or in her belongings during the course of her search for stolen merchandise, after the Plaintiff left, the Manager notified SOS Security that the Plaintiff stole something from the store. ¶¶ 20-22. The Manager then fired Plaintiff, demanding that the Plaintiff not return to finish her assignment for the next two days. ¶ 23. The Plaintiff never stole anything from the store, and was falsely and publically accused of theft based on her race. ¶ 24. Due to unlawful discrimination by Defendant, Plaintiff was terminated, lost pay and other benefits and suffered emotional distress. ¶ 26.

On July 30, 2014, Plaintiff complained of racial discrimination to the EEOC. Dkt. 1 – Exhibit A. On January 5, 2016, the EEOC issued Plaintiff a right to sue letter. Dkt. 1 – Exhibit B. On April 1, 2016, Plaintiff filed the instant complaint. Dkt. 1. On May 23, 2016, Defendants filed an unopposed motion for extension of time to answer or otherwise plead. Dkt. 14. On June 14, 2016, Defendant Coach Inc. filed a 12(b)(6) motion to dismiss Plaintiff's Complaint, in its entirety, with prejudice. Dkt. 17-18.

Subsequently, on June 15, 2016, the parties filed a joint initial status report. Dkt. 20. In that status report, Defendant indicated that it sought a stay of discovery until after this Court ruled on its motion to dismiss so as to avoid the legal expense associated with discovery. *Id.* at p. 3. Plaintiff objected to this request. *Id.* On June 17, 2016, this Court set a briefing schedule on Defendants' motion. Dkt. 21. On June 20, 2016, this Court stayed discovery in this case pending ruling on the motion to dismiss. Dkt. 22. The parties have not engaged in any discovery to date.

## LEGAL STANDARD

The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996). In determining whether to grant a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded allegations in the complaint as true, and draws all reasonable inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007). The federal notice pleading standard requires only that "a complaint state the plaintiff's legal claim ... together with some indication ... of time and place." *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). A court will grant a motion to dismiss only if the plaintiff cannot prevail under any set of facts that could be proven consistent with the allegations. *Forseth v. Village of Sussez*, 199 F.3d 363, 368 (7th Cir. 2000).

The Seventh Circuit summarized the requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, and *Iqbal v. Ashcroft*, 129 S.Ct. 1937 (2009), condensing them into three elements: (1) a plaintiff must give notice of his claims to the defendants; (2) the court must accept the factual allegations in plaintiff's complaint as true unless they are so vague or improbable that they do not give the defendant notice of the claims; and (3) conclusory allegations and bare recitations of

the elements of a claim are unacceptable. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Plaintiffs still need not plead detailed factual allegations. *Iqbal*, 129 S.Ct. at 1949.

## ARGUMENT

### I. Plaintiff Has Put Defendant On Notice of Her Claims And The Motion to Dismiss Should Be Denied.

Defendant seeks to hold Plaintiff to a stricter pleading standard than the federal rules require. Here, Plaintiff has given notice of her claims to Defendant: discrimination because of her race under Title VII and Section 1981 and claims for negligent supervision and intentional infliction of emotional distress pursuant to Illinois law. Plaintiff has alleged sufficient facts, and this Court (and Defendant) can reasonably infer from those allegations that Plaintiff was an employee of Coach, that Title VII and Section 1981 apply, and that Plaintiff was harassed and fired because of her race. Indeed, Plaintiff has done more than recite elements of each claim.

In *Bennett v. Schmidt*, the Seventh Circuit explained that "because racial discrimination in employment is 'a claim upon which relief can be granted,' this complaint could not be dismissed under Rule 12(b)(6). 'I was turned down for a job because of my race' is all a complaint has to say." *Bennett v. Schmidt*, 153 F. 3d 516, 518 (7th Cir. 1998). Plaintiffs are not required to plead facts and there is no heightened pleading standard for employment discrimination claims. Plaintiff has met the notice pleading standard here. Defendants' motion is premature and improper at the pleadings stage and should accordingly be denied.

### II. Plaintiff's Title VII Claim is Viable Because She Was an Employee of Coach, Inc. During Her Assignment.

In a one-paragraph argument in which Coach, Inc. cherry picks one allegation in its favor, Defendant claims that because Plaintiff alleges that she was an employee of SOS Security, she was not an employee of Coach, Inc., and cannot state a Title VII claim against

4

Coach, Inc. *Defendants' Memorandum in Support of its Motion to Dismiss, pp 1*. Defendant's argument misses its mark. On the contrary, Plaintiff clearly alleges that she was an employee of Coach, Inc. for purposes of the Title VII and Section 1981 claims.

"The term 'employee' means an individual employed by an employer . . . ." 42 U.S.C. § 2000e(f). *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). The language of Title VII defines the term "employee" very broadly. In 2002, a court in this district stated that "Congress intended courts to give "employee" a broad construction, in order to protect all workers who may be subject to the invidious workplace discrimination Title VII is designed to prevent." *Jackson v. Int'l Bhd. of Teamsters, Local Union No. 705*, 2002 U.S. Dist. LEXIS 22345, 2002 WL 31572544 (N.D. Ill. Nov. 15, 2002).

In order to bring a Title VII claim against a defendant, a plaintiff must prove the existence of an employer-employee relationship. *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). A plaintiff may have multiple employers for the purposes of Title VII liability. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008). The Seventh Circuit has stressed that "the employer's right to control is the most important of the five factors when determining whether an individual is an employee or an independent contractor, and if an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." *Id*.

Importantly at this stage of the proceedings, there is no requirement that a plaintiff plead sufficient facts to meet every aspect of the Seventh Circuit five-factor test or even the standard outlined above regarding the employer's right to control. Here, Plaintiff has plausibly alleged facts that establish an employee-employer relationship between Coach and Plaintiff under

5

governing law. Discovery will reveal the exact contract between Coach and SOS and how much control Coach and its manager had over Plaintiff. But, taking the facts in the complaint and all inferences in Plaintiff's favor, the following is clear: Plaintiff had an assignment to work for Coach, Inc., showed up for and worked the first night of her assignment, and was subsequently fired by the Defendant Manager. ¶¶ 11-12 and 23. Defendant Manager and Defendant Coach controlled where Plaintiff worked (the Coach Outlet store in Aurora, Illinois), when Plaintiff's shifts would begin (the overnight shifts in early May 2014), controlled searching Plaintiff and accusing her (falsely) of theft, and controlled whether Plaintiff would return for the second night of her shift. As the Seventh Circuit noted in *E.E.O.C. v. State of Illinois*, where control is examined, "the key powers are, naturally, those of hiring and firing." 69 F. 3d 167, 171 (7th Cir. 1995). The Coach manager fired Plaintiff.

Plaintiff has stated a plausible claim for relief under Title VII against her employer Coach, Inc. Defendant's motion to dismiss should be denied.

### III. Plaintiff's 1981 Claim is Viable Under Section 1981.

For the same reasons as above, Defendant's argument in support of dismissal of the Section 1981 claim is premature. Plaintiff has alleged a plausible claim for relief under Section 1981 and the case should proceed to discovery. At this juncture, and considering the facts already raised in Plaintiff's Complaint, there are at least two avenues Plaintiff may obtain relief under Section 1981. First, the existence of a contractual relationship between SOS Security and Coach brings Plaintiff's claim under the ambit of Section 1981's prohibitions against racial discrimination. Alternatively, Plaintiff was an at-will employee of Coach, and the Seventh Circuit recognizes that an at-will employment relationship is sufficiently contractual to bring a plaintiff under the protection of Section 1981.

Under Section 1981, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts…" 42 USC § 1981. Defendants' argument that the Plaintiff did not allege that she had an employment contract with Coach, Inc., is meritless. To the contrary, Plaintiff alleged that "Defendant Coach Outlet Store in Aurora, Illinois, contracted with SOS Security to provide an overnight security guard at its store, while the store was being remodeled during the overnight hours." ¶ 10. Plaintiff was assigned to work security at the Aurora Coach Outlet store because of a contract between SOS Security and Coach, Inc. Plaintiff was therefore was included in the performance of a contract, which is protected by Section 1981. Section 1981 states:

> "for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 USC § 1981.

As the Supreme Court in *Domino's Pizza* explained, "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476 (2006). "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." *Id.* Here, because there was a contract between Coach and SOS Security, a contract under which Plaintiff enjoyed benefits and privileges, Section 1981 applies.

Alternatively, even if the contract between Coach and SOS Security does not invoke the protection of Section 1981 for Plaintiff, Plaintiff was still an at-will employee of Coach, Inc. and Section 1981 applies. Plaintiff was an employee of Coach for the reasons stated above. The

Seventh Circuit has recognized that "employment at will is not a state of nature but a continuing contractual relation…All that is missing is a provision that gives the contract a fixed term…A contract for employment at will may end abruptly but it is a real and continuing contract nonetheless." *McKnight v. General Motors Corp.*, 908 F.2d 104, 108 (7th Cir. 1990). Plaintiff's 1981 action should proceed to discovery because she was an at-will employee of Coach. The Seventh Circuit has reasoned that excluding at-will employment relationships from the ambit of § 1981 would "contravene Congress's intention [that] the Civil Rights Act of 1991 * * * restore the broad scope of Section 1981 to ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race." *Walker v. Abbott Laboratories*, 340 F.3d 471, 477 (7th Cir. 2003).[1] In *Walker*, the Seventh Circuit allowed the plaintiff (an at-will employee of Abbot Laboratories) to proceed on his Section 1981 claim because his at-will employment relationship was sufficiently contractual in nature. *Id*. at 478. Just so here, the nature of Plaintiff's at-will employment with Coach, Inc., is sufficiently contractual in nature to allow her discrimination claim to proceed under Section 1981.

Thus, Defendants' Motion to Dismiss should be denied.

**IV.  Plaintiff Voluntarily Dismisses Her Claim For Negligent Supervision.**

Plaintiff has read the cases cited by Defendant and accordingly seeks to voluntarily dismisses her claim for negligent supervision without prejudice.

---

[1] There are important public policy reasons for this. As the Seventh Circuit and other courts have noted, excluding at-will employees from § 1981 protection "would to allow use of the ubiquitous at-will doctrine as leverage to incite violations of our state and federal laws." *Walker v. Abbott Laboratories*, 340 F.3d 471, 477 (7th Cir. 2003) (citing *Fadeyi v. Planned Parenthood Association of Lubbock, Inc., 160 F.3d 1048, 1052* (5th Cir. 1998) (quotation omitted); *Skinner v. Maritz,* 253 F.3d 337, 340 n. 1 (8th Cir. 2001); *Lauture v. Int'l Business Machines,* 216 F.3d 258, 264 (2d Cir. 2000).

### V. Plaintiff Alleged Extreme and Outrageous Conduct Sufficient for an IIED Claim.

Finally, Defendant argues that Plaintiff's allegations against the unknown Coach Store Manager fail to rise to the level of extreme and outrageous conduct. Again, Defendant holds Plaintiff to a heightened pleading standard where none exists. In order to state a claim for intentional infliction of emotional distress, one must allege that: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended that his conduct should inflict severe emotional distress or knew that there was a high probability that his conduct would cause severe emotional distress; and (3) defendant's conduct in fact caused severe emotional distress. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *Mickiel v. Beluso*, 2011 WL 2295278, *3 (N.D. Ill. 2011). "To be 'truly extreme and outrageous,' a defendant's conduct must be 'so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community.'" *Zitzka v. Vill. of Westmont*, 743 F.Supp.2d 887, 928 (N.D. Ill. 2010); *Feltmeier v.Feltmeier*, 207 Ill.2d 263, 798 N.E.2d 75, 83 (Ill. 2003).

Employers and supervisors are a prime example of the type of individuals who in exercising their authority can become liable for extreme abuses of their positions. *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976) and Restatement (Second) of Torts Ch. 46 comment e (1965). As the Supreme Court of Illinois stated, "the extreme and outrageous character of the conduct may arise from an abuse of a position or a relation with another which gives the actor actual or apparent authority over the other or power to affect his interests." *Id*. "Illinois courts have found extreme and outrageous behavior to exist in the employer/employee context when the employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Naeem v. McKesson Drug Co.*, 444

9

F.3d 593, 605-06 (7th Cir. 2006) (internal quotation marks and citation omitted). Here, Plaintiff alleged that she was searched, her belongings were searched, she was publicly accused of theft, fired, and embarrassed and humiliated, by a person who held power over her: the unknown (at this time) Coach Outlet Store manager.

While it is true that "allegations of a discrimination claim, *on its own*, usually will not support a claim for intentional infliction of emotional distress," *Pirela v. Vill. Of N. Aurora*, 1996 WL 166942, at *7 (N.D. Ill. April 4, 1996) (emphasis added), Plaintiff's allegations rise above mere wrongful termination because of membership in a protected class. Furthermore, the cases cited by Defendants are not applicable here. In *Bogie v. PAWSChicago*, the court dismissed a *pro se* complaint containing an IIED claim stemming from PAWSChicago allegedly failing to hire plaintiff because he was a man. In *Fang v. Village of Roselle*, 1996 U.S. Dist. LEXIS 9512 (N.D. Ill. June 28, 1996), there were no allegations of the plaintiff being accused of theft and searched by a manager of the employer. Similarly, in *Harriston v. Chicago Tribune Co*., 982 F.2d 697, 703 (7th Cir. 1993), the Seventh Circuit affirmed a decision made at the summary judgment phase of the case, where the employee alleged that she was not allowed to supervise two white subordinates, received a reprimand for no reason, was refused participation in a management incentive fund, was forced out of her management position, was falsely accused of poor sales and threatened with discipline, and was excluded from other officer activities. There, however, there was no evidence of accusations of committing criminal acts. Finally, the facts in *Chi v. Loyola Univ. Med. Ctr*., 787 F. Supp. 2d 797, 808 (N.D. Ill. 2011) are also distinguishable for two reasons: a) the comments, which included racial slurs and false accusations of mistakes and gossip, were made by co-employees, not supervisors and b) the comments still did not accuse the plaintiff there of committing any crime.

Illinois law allows recovery for IIED in the employment context for instances in which the employer's conduct "go[es] well beyond the parameters of the typical workplace dispute." *Honaker v. Smith,* 256 F.3d 477, 492 (7th Cir. 2001). That is exactly what Plaintiff has alleged here. In sum, Plaintiff has sufficiently alleged extreme and outrageous conduct in order to sustain a viable IIED claim. Defendant's motion to dismiss the IIED claim should be denied.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court deny the disputed portions of Defendants' Motion to Dismiss Plaintiff's Complaint, dismiss Plaintiff's claim for negligent training and supervision, set a discovery schedule for this case, and for any other and additional relief this Court deems equitable and just.

Respectfully Submitted,

s/ Mary J. Grieb
Mary J. Grieb


One of Plaintiff's Attorneys
Shiller Preyar Law Offices
601 S. California Ave.
Chicago, IL 60612
(312) 226-4590

## CERTIFICATE OF SERVICE

I, Mary J. Grieb, hereby certify that a copy of the foregoing was served upon all opposing counsel via the CM/ECF email system.

s/ Mary J. Grieb
Mary J. Grieb

Shiller Preyar Law Offices
601 S. California Ave.
Chicago, IL 60612
(312) 226-4590