# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 3950 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| COACH OUTLET STORE, | ) | |
| UNKNOWN COACH OUTLET | ) | |
| STORE MANAGER, and | ) | |
| COACH, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michelle Thomas has sued Coach Outlet Store, an unknown Coach Outlet Store Manager, and Coach, Inc. (collectively, "Defendants"). She alleges race discrimination in violation of 42 U.S.C. § 1981 (Count I) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count II), and she also brings state law claims for negligent supervision (Count III) and intentional infliction of emotional distress (Count IV). Defendant Coach Inc. ("Coach") has moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1] For the reasons stated herein, Coach's motion to dismiss is granted in part and denied in part.

---

[1] Coach Outlet Store and the unknown Coach Outlet Store Manager have not joined Coach's motion to dismiss. Coach has taken the position that Coach Outlet Store is not a separate legal entity and should therefore be voluntarily dismissed by Thomas. *See* Def.'s Mem. Supp. at 1 n.1, ECF No. 18. The Court notes that process was served on Coach Outlet Store on May 2, 2016. *See* Summons, ECF No. 8. If Defendants take the position later in these proceedings that the Court should dismiss Coach Outlet Store on the ground that it is not a separate entity, Defendants will have to support this position with sufficient evidence.

## Factual Background

Plaintiff Michelle Thomas is an African American woman who resides in Illinois. Compl. ¶¶ 6, 9, ECF No. 1. In 2014, she was employed as a security guard by SOS Security. *Id.* ¶ 9. SOS Security entered a contract with the Coach Outlet Store in Aurora, Illinois, to provide an overnight security guard at the store while the store was in the process of being remodeled. *Id.* ¶ 10. In connection with this contract, Thomas was assigned to work as the overnight security guard at the Coach Outlet Store for three nights, beginning the night of May 1, 2014. *Id.* ¶¶ 11–12.

Thomas's claims arise from an incident that took place on the second night of her assignment. On May 2, 2014, a Coach Outlet Store manager arrived at the store where Thomas was working. *Id.* ¶ 15. According to Thomas, the manager proceeded to immediately—and falsely—accuse Thomas of stealing items from the store. *Id.* ¶¶ 16–17. The manager then physically patted down Thomas and "roughly searched" through her belongings, "holding up [Thomas's] intimate apparel and other items in front of people in the store." *Id.* ¶¶ 18–19.

The manager's search did not reveal any stolen items. *Id.* ¶ 20. Nevertheless, the manager e-mailed various individuals after the incident, including Thomas's supervisor at SOS Security, and told them Thomas had stolen something from the store. *Id.* ¶¶ 22, 24. The manager then terminated Thomas from the remainder of her assignment. *Id.* ¶¶ 23, 25. Thomas alleges that she was falsely accused of theft and terminated from her employment at the Coach Outlet Store on account of her race. *Id.* ¶¶ 25, 30, 35, 37.

## Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2). In reviewing a motion to dismiss, a court must accept as true all well-pleaded allegations in the complaint and must draw inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081.

## Analysis

Coach has moved to dismiss all four counts of Thomas's complaint for failure to state a claim pursuant under Rule 12(b)(6). First, Coach contends that Thomas's § 1981 and Title VII claims should be dismissed because Thomas has not sufficiently alleged the existence of an employment contract or employment relationship with Coach. Next, it seeks dismissal of Thomas's negligent supervision claim because Thomas has not alleged that Coach knew or should have known the Coach Store Outlet manager posed a danger to Thomas. Coach also argues that Thomas's claim for intentional infliction of emotional distress should be dismissed

on the ground that Thomas has not sufficiently alleged extreme and outrageous conduct to support her claim. The Court will address each of these arguments below.

I.  **Count I: Race Discrimination Under 42 U.S.C. § 1981**

Under 42 U.S.C. § 1981, all persons, regardless of race, are guaranteed "the same right . . . to make and enforce contracts." 42 U.S.C. § 1981(a). This guarantee protects the rights to enter, perform, modify, and terminate contracts, as well as to enjoy "all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). Section 1981 therefore offers a basis for relief "when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing . . . contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

Coach argues that Thomas has failed to state a claim under § 1981 on the ground that Thomas has not alleged the existence of a contractual relationship between Thomas and Coach. Def.'s Mem. Supp. at 3. The Seventh Circuit, however, has made clear that a defendant "can be liable under § 1981 for *interfering* with the plaintiff's relationship with his employer," even when the plaintiff has no direct contractual relationship with the defendant itself. *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 896 (7th Cir. 2015) (citing *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008); *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 782–83 (7th Cir. 2006)). In other words, a defendant's "tortious interference with [the plaintiff's] contract rights violates section 1981 when the motivation for the interference is racial," regardless of whether the defendant itself was a party to the

4

contract at issue. *Muhammad*, 547 F.3d at 878. The lack of an employment relationship between the plaintiff and the defendant thus does not preclude the plaintiff from prevailing on a § 1981 claim. *See id*; *Deets v. Massman Const. Co.*, 811 F.3d 978, 984 (7th Cir. 2016).

Here, Thomas has alleged that she had an employment relationship with SOS Security. Compl. ¶¶ 9, 11. She further alleges that Defendants interfered with this employment relationship by terminating Thomas's assignment to work at the Coach Outlet Store and by falsely reporting to Thomas's supervisor at SOS Security that Thomas had stolen items from the store. *Id.* ¶¶ 22–25. Because these allegations amount to a claim that Defendants interfered with Thomas's employment relationship with SOS Security, and because Thomas attributes this interference to racial motivation, *see id.* ¶¶ 28–31, Thomas has sufficiently stated a claim to relief under § 1981 against Coach. *See Sklyarsky*, 777 F.3d at 896; *Muhammad*, 547 F.3d at 878. Coach's motion to dismiss Count I is accordingly denied.

## II. Count II: Race Discrimination Under Title VII

Coach also argues that Thomas's Title VII claim should be dismissed because Thomas has alleged that her employer was SOS Security rather than Coach. Def.'s Mem. Supp. at 2–3. Thomas disagrees, contending that she has alleged sufficient facts to support her Title VII claim under the theory that SOS Security and Coach were her joint employers. Pl.'s Resp. at 4–6, ECF No. 23.

A plaintiff may pursue a Title VII claim against an entity under the theory that the entity was one of her joint employers. *Sklyarsky*, 777 F.3d at 896. In

5

considering whether an entity is a joint employer for purposes of Title VII liability, courts consider five factors: "(1) the extent of the [entity's] control and supervision over the employee; (2) the kind of occupation and nature of skill required, including whether skills were acquired on the job; (3) the [entity's] responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 702 (7th Cir. 2015) (citing *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991)). As the Seventh Circuit has explained, these five factors help to structure the court's determination of "whether the putative employer exercised sufficient control, and whether the 'economic realities' are such that the putative employer can be held liable under Title VII." *Id.* Accordingly, the first of these factors—that is, the extent of the employer's control over the employee—is "the 'most important' consideration in ascertaining the existence of an employer-employee relationship." *Id.* at 703 (quoting *Knight*, 950 F.2d at 378).

The issue of whether an entity is a joint employer is generally unsuitable for resolution on the pleadings because it involves "a fact-intensive inquiry that typically requires further development through discovery." *Penteris v. Citgo Petroleum Corp.*, 104 F. Supp. 3d 894, 900 (N.D. Ill. 2015) (applying the five joint-employer factors to determine a putative employer's status in the context of an ADA claim). As such, courts routinely refuse to dismiss Title VII claims at the pleading stage as long as the plaintiff's factual allegations support the theory that the defendant exercised sufficient control over the plaintiff to be her joint employer.

6

*See, e.g., Pruitt v. Pers. Staffing Grp., LLC*, No. 16 C 5079, 2016 WL 6995566, at *4 (N.D. Ill. Nov. 30, 2016) (holding that plaintiffs stated plausible Title VII claims against defendant as their joint employer when allegations showed that defendant "had certain control over Plaintiffs' employment"); *Tritsis v. BankFinancial Corp.*, No. 16 C 02052, 2016 WL 5171785, at *2 (N.D. Ill. Sept. 21, 2016) (holding that plaintiff, an executive officer at a bank, sufficiently alleged that an entity was her joint employer when she alleged that the entity "exerted a significant degree of control" over her employment by determining bank executives' eligibility for stock options); *Leone v. Naperville Prof'ls, Inc.*, No. 14 C 9583, 2015 WL 1810321, at *4 (N.D. Ill. Apr. 17, 2015) (holding that plaintiff sufficiently alleged that defendant was her joint employer where defendant had the power to terminate plaintiff's employment for failure to follow defendant's policies).

In the present case, Thomas alleges that Defendants terminated her employment with respect to her assignment to work as a security guard at the Coach Outlet Store. Compl. ¶¶ 25, 37. Accepted as true, as they must be at this stage, these allegations suggest that Defendants had some control over Thomas's employment because Defendants had the power to terminate Thomas's employment assignment at the Coach Outlet Store. Under the federal notice pleading standard, such allegations suffice to state a Title VII claim under a joint employer theory. *See Pruitt*, 2016 WL 6995566, at *4; *Leone*, 2015 WL 1810321, at *4.

Furthermore, the cases that Coach cites in support of its argument—namely, *Shah v. Littelfuse Inc.*, 2013 WL 1828926 (N.D. Ill. Apr. 29, 2013), and *Jones v. Seko*

*Messenger, Inc.*, 955 F. Supp. 931 (N.D. Ill. 1997)—are readily distinguishable from the facts at bar. In *Shah*, the court dismissed a Title VII claim with regard to one of the defendants when the plaintiff had not alleged a single fact demonstrating that the defendant had exercise any control over his employment. 2013 WL 1828926, at *3–4. And in *Jones*, the court dismissed a Title VII claim brought under a joint employer theory only after the parties had conducted formal discovery on this issue. 955 F. Supp. at 932–34. By contrast, because Thomas asserts that Defendants had power over the termination of her employment assignment, she alleges that Defendants exercised some control over her employment. At the pleading stage, prior to the opportunity to conduct discovery, these allegations suffice to state a Title VII claim under the theory that Coach was her joint employer. For these reasons, Coach's motion to dismiss Count III is denied.

### III. Count III: Negligent Supervision

Next, Coach argues that Thomas's claim for negligent supervision should be dismissed because Thomas has failed to allege that Coach knew or should have known the Coach Outlet Store manager presented a danger to Thomas. Def.'s Mem. Supp. at 3–4. In response, Thomas concedes this argument and accordingly asks to "voluntarily dismiss[ ] her claim for negligent supervision." Pl.'s Resp. at 8. The Court therefore dismisses Thomas's claim for negligent supervision without prejudice.

### IV. Count IV: Intentional Infliction of Emotional Distress

Under Illinois law, "[t]he tort of intentional infliction of emotional distress requires proof of four elements: (1) extreme and outrageous conduct; (2) intent or

recklessness to cause emotional distress; (3) severe or extreme emotional distress suffered by the plaintiff; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (citing *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767–68 (Ill. 1976)). Taking issue with only the first of these four elements, Coach argues that Thomas's claim for intentional infliction of emotional distress should be dismissed because Thomas has failed to allege sufficiently extreme and outrageous conduct. The Court agrees.

Conduct is extreme and outrageous under Illinois law only if it goes "beyond all bounds of decency [so as to] be considered intolerable in a civilized community"; "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not arise to the level of extreme and outrageous conduct required to support a claim for emotional distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). "Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case." *Id.* (citing *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994)). To determine whether conduct is extreme and outrageous, courts consider factors such as whether the defendant "stood in a position of power or authority relative to the plaintiff," "reasonably believed that his objective was legitimate," or knew the plaintiff was "peculiarly susceptible to emotional distress." *McGrath*, 533 N.E.2d at 810–11; *see also Honaker*, 256 F.3d at 491–92.

9

In the employment context, Illinois courts have found extreme and outrageous conduct "where the employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Honaker*, 256 F.3d at 491 (collecting Illinois cases). In general, however, "Illinois courts have been hesitant to find intentional infliction of emotional distress in the workplace because, 'if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action.'" *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (quoting *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867 (Ill. 2000)). As such, Illinois courts have found behavior in the workplace to rise to the level of extreme and outrageous conduct only when the behavior is truly egregious. *See, e.g.*, *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1251–52 (Ill. 1990) (finding extreme and outrageous conduct where employer offered plaintiff money for sexual favors, fired her after she refused, and subsequently threatened to rape and kill her); *Milton v. Ill. Bell Tel. Co.*, 427 N.E.2d 829, 833 (Ill. 1981) (finding extreme and outrageous conduct where employer engaged in extensive harassing conduct to coerce plaintiff into falsifying work reports); *see also Naeem*, 444 F.3d at 605 (finding extreme and outrageous conduct under Illinois law where employer endangered plaintiff's safety by forcing her to climb up an unstable metal stairway while pregnant in order to connect computer equipment and sabotaged her computer to deny her access to work files).

In light of these principles, "Illinois courts have held that even a wrongful discharge based on a prohibited category . . . is not sufficiently outrageous or extreme to sustain a claim of intentional infliction of emotional distress." *Bogie v. PAWS Chi.*, 914 F. Supp. 2d 913, 917 (N.D. Ill. 2012) (internal quotation marks omitted). Conceding this point, Thomas acknowledges that her allegations of discrimination cannot support her claim for intentional infliction of emotional distress on their own. Pl.'s Resp. at 10. But she argues that other allegations in her complaint suffice to show extreme and outrageous conduct, pointing in particular to her allegations that the Coach Outlet Store manager falsely accused her of theft, patted her down, and searched her belongings. *Id.*

Although Thomas's interaction with the Coach Outlet Store manager may have been insulting and embarrassing, the manager's acts did not constitute extreme or outrageous conduct capable of supporting a claim for intentional infliction of emotional distress under Illinois law. First, the manager's false accusations against Thomas fall far short of being extreme and outrageous. False accusations of illegal activity or poor work performance do not give rise to a claim for intentional infliction of emotional distress, even when those accusations are made to third parties. *See Socorro v. IMI Data Search, Inc.*, No. 02 C 8120, 2003 WL 1964269, at *1 (N.D. Ill. Apr. 28, 2003) (dismissing claim for intentional infliction of emotional distress under Illinois law where defendant fired plaintiff based on erroneous report that plaintiff had committed a crime and where defendant then relayed this false information to third parties); *Layne v. Builders*

*Plumbing Supply Co.*, 569 N.E.2d 1104, 1109 (Ill. 1991) (no extreme and outrageous conduct where defendant falsely told police that plaintiff had harassed, assaulted, and threatened a coworker); *see also Ogbolumani v. Young*, No. 1-14-1930, 2015 WL 1284064, at *13 (Ill. App. Ct. Mar. 20, 2015) (supervisor's conduct was not extreme and outrageous where he made false and detrimental statements in plaintiff's work performance reviews).

The pat-down search and the search of Thomas's belongings also do not constitute extreme and outrageous conduct. While Illinois courts have held that a decade-long pattern of physical abuse and injury amounts to extreme and outrageous conduct, *see Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003), a one-time physical contact of the type at issue here does not. *See Miller v. Equitable Life Assurance Soc'y of the U.S.*, 537 N.E.2d 887, 888–90 (Ill. 1989) (male coworker's offensive touching of female plaintiff's breasts, shoulders, and head was not extreme and outrageous conduct); *see also Love v. City of Chi.*, No. 09 C 03631, 2015 WL 2193712, at *13 (N.D. Ill. May 7, 2015) (dismissing claim for intentional infliction of emotional distress because allegations that defendants improperly searched and detained plaintiff did not show extreme and outrageous conduct under Illinois law). It is likewise insufficient that the manager conducted the search in a humiliating way by holding up the "intimate apparel" she found among Thomas's belongings, because such conduct merely "create[s] some distress and embarrassment" and therefore is not extreme and outrageous. *Layne*, 569 N.E.2d at 1109; *see also Ponticiello v. Aramark Unif. & Career Apparel Servs., Inc.*, No. 05 C 1137, 2006 WL

2699416, at *12 (N.D. Ill. Sept. 19, 2006) (no extreme and outrageous conduct under Illinois law where plaintiff endured "offensive and humiliating taunts and jokes" from her coworkers over the course of three and a half years).

In sum, the Court finds that Thomas has not alleged conduct amounting to extreme and outrageous conduct under Illinois law. As such, Thomas has not stated a plausible claim to relief for intentional infliction of emotional distress. Count IV is thus dismissed.

## Conclusion

For the reasons stated herein, Coach's motion to dismiss [17] is granted in part and denied in part. The Court dismisses Thomas's claims for negligent supervision (Count III) and intentional infliction of emotional distress (Count IV). In all other respects, Coach's motion to dismiss is denied.

**IT IS SO ORDERED.**　　　　　　　　ENTERED   1/27/17

_____
**John Z. Lee
United States District Judge**